## Commonwealth v. Lowe

*Edward M. Marsico, assistant district attorney,* for the Commonwealth.

*William A. Fetterhoff,* for defendant.

DOWLING, *J.,* January 30, 1991—Our federal Union—on whose maintenance so many men and women have expended their blood and energy over the past two centuries—is a delicate equipoise of reciprocal rights, duties and divisions of authority. One of the most crucial of these is what has come to be known as the "full faith and credit" clause of the Constitution, which holds that each state will recognize the validity of the statutes, licensing procedures and court decrees of the others. This is often no simple proposition: American history has been shaken from time to time by legal crises stemming

from this principle, some of them semicomic (as when many Eastern states refused to concede the legitimacy of so-called "quickie" divorces granted in Nevada) and some world-shaping events (such as the refusal of several Northern state courts in the 1850's to recognize the efficacy of the Southern laws on the subject of slavery). In the latter instance, of course, the ultimate result was a cleavage between the states that led Horace Greeley to make his (fortunately unwarranted) adieu to 11 members of the Union family: "Wayward sisters, depart in peace."

We, of course, have no desire in the instant matter to say to the great Empire State which adjoins our Commonwealth, "Depart in peace"; but it has fallen to us to determine whether a pending matter against defendant should be dismissed, on the strength of the protection afforded him by a New York driver's license; or whether we must insist that Pennsylvania's denial of his privileges as an operator of motor vehicles acts as an all-purpose bar to his exercise of that prerogative in this state, New York to the contrary or no.

Defendant, Dewitt Lowe, was the possessor of a Pennsylvania driver's license which was suspended on June 18, 1980. Pending his appeal of this action, the license was reinstated on June 26, 1980. This reinstatement lasted until May 10, 1982, when Lowe's appeal was denied. During the 23 months of his reinstatement, Lowe obtained a valid New York state driver's license, which he has kept in force to the present day.

On March 24, 1990, Lowe was cited under 75 Pa.C.S. §1543,[1] driving while operating privilege is

---

1. "§1543. *Driving while operating privilege is suspended or revoked*

suspended or revoked. He was convicted in a summary proceeding and has appealed to the court.

No one disputes that defendant did not have a valid Pennsylvania driver's license at the time of his 1990 citation. It is well established in the law that a suspension of driving privileges is not subject to being neutralized either by a simple passage of time or the performance of a mandatory act, but must be reinstated by an affirmative act on the driver's part. *Commonwealth v. Moyer,* 225 Pa. Super. 374, 310 A.2d 345 (1973). The only issue we must consider is whether his possession of a valid New York license operates as a ban to his citation for lacking a Pennsylvania license.[2]

We must conclude that it does not. The two strongest points in favor of defendant's position are: (a) that he secured a valid out-of-state license while his Pennsylvania license was still legally in effect (thereby avoiding the charge that he was trying to make an end run around the ban on his driving privileges in the Commonwealth),[3] and (b) that the time of his actual suspension from 1982 had long expired by 1990. The compelling quality of these

---

"(a) *Offense defined*—[A]ny person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $200."

2. Mr. Lowe contends that he never sought to reinstate his Pennsylvania driving privileges because he had "abandoned" his Pennsylvania license in favor of its New York counterpart.

3. It also absolves defendant from the charge of having violated 75 Pa.C.S. §1573, which prohibits a driver whose rights have been suspended from driving under a foreign license issued "during the suspension or after the recall, cancellation or revocation [of his original license]."

arguments is augmented by the fact that several of the cases cited by the Commonwealth depended upon factual elements not consonant with those in the case at bar. The driver in *Commonwealth v. MacNamara,* 12 D.&C. 3d 36 (1979), for example, was stopped and cited for driving during the *actual* period of his suspension, which is not the case here; and the offender in *Commonwealth v. Trice,* 26 Somerset Leg. J. 260 (1970), secured his out-of-state license while his Pennsylvania driving privileges were in abeyance, which is also not true here.

But, at the last, this court's decision was made when it was compelled to confront the simple question: does this Commonwealth, or any state, have the right to determine, through its own agencies, who shall have the right to operate a motor vehicle within its borders, or does it not? If Mr. Lowe were exempt from the jurisdiction of Pennsylvania law on the grounds of his being a non-resident of this state, our conclusion would differ markedly; but since he does not seem to dispute that he is a Pennsylvanian, he must be regarded as being subject to the laws of this state, and his brandishing of a New York operator's license in the face of this Commonwealth cannot be held to avail him. There is no reason apparent to us which explains why he did not seek to have his Pennsylvania privilege reinstated after the period of his suspension had run; and his references to his alleged "abandonment" of his Pennsylvania license are particularly unconvincing. An individual can legitimately "abandon" a state's laws only at the time he also "abandons" his contacts and residency within that state; otherwise, one could theoretically be faced with reductio ad absurdum such as Philadelphia or Pittsburgh residents who paid their state taxes into the coffers of New Jersey or West

Virginia on the grounds that they had unilaterally elected to "abandon" the revenue acts of Pennsylvania.

We wish to emphasize, in the spirit of the passage with which we opened this opinion, that we do not, by reaching this conclusion, challenge the validity of the license issued by our sister state, as it pertains to Mr. Lowe's use of it within her borders. We merely insist upon the supremacy of our own Commonwealth's right to determine the conditions under which its own people may operate vehicles within Pennsylvania frontiers.

Accordingly, we enter the following

### ORDER

And now, January 30, 1991, defendant's appeal is denied, and he is found guilty.